We move to the fifth case this morning, U.S. v. Rees. Good morning. May it please the court, counsel. My name is Charles Shire and I represent Michael Rees. This case involves a search warrant that was obtained both for an apartment at his college address and for his home address in Pekin, Illinois. We filed a motion to suppress, arguing that this investigation started on October 5, 2017, where an investigative session hit child pornography. And they traced that to an IP address, but it was a 32-unit apartment complex. Counsel, I want to interrupt you for the procedural point. You didn't include the district court – I mean, at least I couldn't find it. I wound up having to go to the docket. I mean, you're supposed to have in the brief, unless I just missed it, the district court's – even if it's a transcript part, which is what I ended up doing, is finding the transcript and looking through it. How come you didn't include it in the – It must have been an oversight because normally the judge would do it by a ruling, and I'm not sure, ma'am. I apologize for that. Yeah, it should have been added to that, and I'm not sure why it wasn't. Okay, that's part of the circuit rules and part of the certification that you complied with them. Without a doubt. Okay, go ahead. My apologies. All right, so October 5, 2017, they hit this 32-unit apartment complex. They don't know which unit that was sharing the child pornography, and there's no court that would have issued them a search warrant at that point. The officer could not have gone and said, hey, I hit child pornography at this building, and there's 32 units. And the court would have said, well, which unit do you want the search warrant for? And they wouldn't have been able to answer. And, of course, they didn't go seek a search warrant for that. The next thing they did is they started an investigative session October 5 to October 30 of 2017. They hit more child pornography. They have the exact same issue as they did on October 5 because they don't know what apartment it is in. It's the exact same IP address. They used some administrative subpoenas to sort of determine that, okay, there's one IP address, one router for this 32-unit apartment complex, and they are able to determine who is managing the Internet service, but they're never actually able to decide which unit at this point. Then the next thing they do, the next major thing they do is they run an ICAC COPS database with the IP address, and they're able to hit that on a service called eMule or eDonkey. It's used simultaneously. But this file sharing actually hit that IP address, and it hit it on December 9 of 2017. They also see that on January 8 of 2018, a similar IP address hit using the exact same user hash. Now, what is a user hash? Well, the affidavit really doesn't explain it very well, but the best you can determine is that when you're on eMule or eDonkey, you can create some software that allows you to use it, and it gives you a unique user hash. Counsel, do you want to address why the good faith, why Leon doesn't settle this? Yes, ma'am. Because even if everything you're saying is right on probable cause, which we'll put that aside, you still have to confront the Leon problem. Right, and I can do that a couple of different ways. One, it's so lacking, and this isn't a typical bare-bones affidavit where there's just a few sentences. It's so lacking over the course of 17, 18 pages. But here, they have no description, no description of the child pornography that was actually connected to his address. When they connect the IPs, it's done January 8 of 2018 and December 9 of 2017, but they never even describe the child pornography. They don't even tell us in the affidavit what the images were. The only thing they do is they say it hit the database, and that was a big issue in the motion. And that's why we argued, and I would say that's why it's so lacking, because I know it's a 17-page affidavit, but when you read through it, it never connects the dots.  You could also say it was reckless in the sense that it fails to explain that the files were ever downloaded or viewed, because it doesn't ever explain it. The files were never downloaded or viewed. The files on October 5th were, and the files during the investigative session between October 5th and October 30th, those were, but they didn't know what unit. So when they actually hit the ICAC database December 9th, January 8th, they don't even describe the files. That's why it's reckless disregard, because they don't ever say what it was. Now, the government, both at the hearing for the motion to suppress and in their brief, they try to explain it by indicating that, well, the affidavit actually does say it. They say that the affidavit explains that you can't hit the ICAC COPS database unless it's child pornography, but that's nowhere in the affidavit. And that's why, ma'am, under the good faith, under those two prongs, it couldn't save it. It shouldn't be able to save it. The government then spent 30 minutes, 30 minutes at our hearing, along with a chart, a separate chart that added information. Now, I understand that you can use a chart in a motion to suppress hearing, but this chart actually included additional information. It actually stated, well, an ICAC COPS database is the database that's referred to in paragraphs 12 and 13 of the affidavit. And that's on Appendix 44. But that's not what it says. When we go to Appendix 44 and we see paragraphs 12 and 13, it doesn't say that at all. It never explains ICAC COPS database. And, in fact, we don't even hear the reference to ICAC COPS database until paragraph 34 in the affidavit, and it doesn't say that. It never says that the only way to hit that database is to be sharing child pornography. And that's what the entire affidavit hinges on. Why the heck did it hit the ICAC COPS database? Government says it's because it contained child pornography, but that's not in the affidavit. So, Counsel, those are arguments why you think probable cause was lacking, but are you able to identify any case that refuses to apply the Leon Goodfaith exception when there was a 17-page affidavit? No, ma'am. None. None whatsoever. I'll reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, I'm Scott Simpson on behalf of the United States. I think this is a prime case in which we need to consider the fact that the probable cause analysis is a matter of the totality. Could you raise your voice a little bit? Oh, I'm sorry. We need to consider that this is a prime case where the Court needs to consider the fact that probable cause is a totality of the circumstances analysis. Counsel's, defense counsel's approach here seems to be to take shots at individual facts, but that's not what this analysis is about. It depends on the totality of the circumstances that requires looking at the whole picture to use this Court's terminology. As the Supreme Court has said, the whole is often greater than the sum of its parts viewed in isolation. We also need to remember that the probable cause determination is far short of certainty also from this Court. There only has to be a substantial chance, not even a better than 50 percent chance, that evidence of criminal activity will be found. As the Supreme Court has said, it has to be a fair probability. If I could just walk through five little points from the facts that we believe establish the probable cause here. This, again, is the whole picture, and you have to put this whole picture here together to see the probable cause. The affidavit established that Michael Reese was splitting his time between his house in Pekin and his apartment in Normal on the edge of the Illinois State University campus. Number two, the affidavit established that someone at that apartment building was offering a set of 32 files known to contain child pornography over the BitTorrent network in October 2017. That child pornography is described in the affidavit. Number three, this one I think is very significant, a specific electronic device. They could do this because on the eDonkey network, each device, for example, each computer that's offering child pornography has its own unique identifier. So number three is a specific electronic device was offering child pornography over the eDonkey network from the apartment building in Normal on December 9th. About a month later, this is now during the Christmas, the holiday break from Illinois State University, the very same device was offering child pornography over the eDonkey network, again, from the house that Reese owned in Pekin. Next, number four, someone at Reese's house was also offering child pornography over the BitTorrent network on the same day. And number five, at the same time, this again is during the school year, so this is on March 6th, 2018. At the same time, when someone in the apartment building was offering child pornography over the BitTorrent network through a software port used for file sharing, someone in Reese's specific apartment was communicating through that very same port. These are, the affidavit explains that software ports go from, I believe, port zero to some tens of thousands of numbers, how they identify them. And this was a very high number. The software, when you install it, chooses a high value port to communicate through. And so, again, on March 6th, someone in Reese's specific apartment was using that very same port communicating with BitTorrent. I'm not sure how the police, what more the police could have done to establish probable cause here. Someone was clearly offering child pornography from Reese's house and his apartment. And the fact that the same device, the very same device, was offering child pornography from both locations at different times strengthened the belief that that person was Michael Reese. Council talked about the demonstrative aid that government council used with the district court on the motion to suppress. I would emphasize that that demonstrative aid here is not evidence. What's evidence in determining whether probable cause was established is the affidavit. That demonstrative aid was just used to attempt to help the district court understand the affidavit better. It did not actually add, if I could address defense counsel's argument that the demonstrative aid added evidence. There is one database, one law enforcement database of computers and devices and IP addresses offering child pornography. There is one such database described in the affidavit. Early on in paragraphs 12 and 13, it is referred to as, I believe it's the law enforcement database or something to that effect. It's the peer-to-peer database they call it at that point. In paragraph 13, the affidavit explains very carefully how that database is compiled. It's devices and IP addresses that are offering child pornography. Then true, only later on is it referred to as the ICAC COPS database. It might have been better to have pointed out early on that yes, that is the ICAC COPS database. Again, the affidavit only talks about one database. The affidavit as a whole does establish that the ICAC COPS database is compiled, is created based on IP addresses and devices that are offering child pornography. I noticed that counsel, I don't believe, talked about the staleness argument that they made in district court. I assume they're no longer pressing that. If I could now turn to the good faith argument. Even if the affidavit here doesn't establish probable cause, and I would find that hard to imagine, there's more than enough here to rely on the good faith exception. This is not one of the rare occasions this court has used that term. This is not one of the rare occasions to find that officers exercise bad faith in relying on an affidavit. I think we need to remember, if we decide that we can't rely on the good faith exception, we're saying the officers exercise bad faith. I can't imagine making that finding. To quote this court in the liquor's decision from just last year, finding of bad faith requires some showing of highly unusual circumstances, and that certainly doesn't exist here. The officers here executed the search warrants, relying on them in objectively reasonable good faith. And remember the good faith exception asks, is there a benefit to suppressing the results of the searches? And here there is no such benefit. And that exception also asks the court to consider what would be the cost of finding bad faith. Here there would be a very substantial cost of finding bad faith. Specifically, a man who contributed indirectly to the heinous sexual abuse of children 8 to 12 years of age would go unpunished. Unless there are further questions, Your Honors. I don't believe so. Thank you. We ask the court to affirm. Thank you. Thank you, counsel. Thank you. And to address counsel's, he gave five points to show that in his argument that it was clearly offering child pornography. What I would say is that the affidavit doesn't say that. The affidavit says that there was child pornography on October 5th, 2017. And files that were hit October 5th between October 5th and October 26th of 2017. But that's at the 32-unit apartment complex. And the officers had no idea who was sharing at that point. So it is dramatically different. And I took that counsel is agreeing to some extent that the affidavit does not say that ICAC COPS database is the database. As it is laid out in paragraphs 12 and 13. It is confusing. And certainly it is something that did make it less clear. As far as the good faith exception goes, you know, most of these cases do not involve the routers, the discussion of routers, ports, user hashes. We also have a transient device that's hitting on multiple locations. Typically they will hit during an investigative session. They get that IP address. They get the warrant. Kick in the door and get the devices. This is a bit different. And I think it would fall under the exception here. Because we do have a 17, 18 page affidavit that talks about a lot of computer stuff. But it never connects the dots. Thank you very much. Thanks to both counsel and the cases taken under advisement.